## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Dennis A. Verrett, Jr. individually and
 as parent and next friend of T.S.V.

          Plaintiffs,

vs.

Independent School District #625

          Defendant.

Court File No. 0:18-02513-DSD-BRT
Case Type:    Const. Discrimination

**PLAINTIFFS' REPY MEMORANDUM
TO MOTION TO DISMISS**

---

## INTRODUCTION

The Plaintiffs' claims under the Equal Educational Opportunities Act, Title

VI of the Civil Rights Act of 1964, the Fourteenth Amendment of the United States

Constitution, Saint Paul Human Rights Ordinance, and the Minnesota Human

Rights Act arising from the actions of the Defendant with respect to the incidents

on June 8, 2017, and its actions related to the investigation and handling of those

incidents thereafter are a serious violation of the Plaintiffs' civil rights and do

represent significant actionable claims which should be redressed by this Court.

Plaintiff Dennis A. Verrett Jr. does have standing for his claims and this court does

have subject matter jurisdiction over those important civil rights claims.  The July 5, 2018, Memorandum of Findings issued by the Saint Paul Department of Human Rights agrees with the Plaintiffs' position.  See attached and incorporated herein by reference.

## FACTS

Plaintiffs restate and hereby republish the facts set forth in their Complaint filed with the Court.  Plaintiffs' factual assertions were entirely consistent with, and in fact based upon, the City of Saint Paul Human Rights Division's Memorandum of Findings, attached to the Complaint as Exhibit A. The Plaintiffs do not disagree with or object to the Defendant's rendition of the facts in its memorandum in support of its motion to dismiss, except to the extent they omit and minimize the severity and pervasiveness of the District's acts and omissions. In its attempt to provide cover for the egregious behaviors of Defendant, the factual statement in the Defendant's memorandum is factually accurate, but misleading.

In relying upon and confining themselves to the factual assertions contained in the report of a third-party governmental agency tasked with transparent, process-driven and impartial fact-finding, which facilitates and encourages the Defendant's participation, the Court can fully rely upon the accuracy of factual assertions not directly refuted by the Defendant during that investigation and place a high degree

of confidence and trust in those assertions contained in the third-party Memorandum of Findings.

Restating here the plethora of facts articulated in the Memorandum of Findings and the Complaint would be redundant and seemingly unnecessary, therefore the Plaintiffs instead offer the following unrefuted facts to provide the Court some context for reviewing the legal arguments of the parties.

- The actions of the assistant principal endorsed the in-class statement of the teacher, in that they attempted to support the truthfulness of his thoughtless assertions.  In doing so, T.S.V. could reasonably infer that the racial judgment and animus inherent in his statement were shared by the administration of the school and were pervasive with the Defendant institution.

- The Defendant's refusal to take immediate remedial action allowed other non-minority students to persist in the belief that certain other races were behaviorally or academically inferior. Plaintiffs were left with the unavoidable conclusion that T.S.V. would be required to attend classes in the upcoming year with students who had been *taught* that T.S.V. was part of an inferior racial group.

- By not correcting what Defendant characterizes as mere racially insensitive comments becomes institutionalized by Defendant's failure to

provide context or remediation.  All students in that class could

reasonably infer that the Defendant school operated under a theory that

certain races were academically and behaviorally inferior.

## <u>ARGUMENTS</u>

## I.  Standard of Review

The Federal Rules of Civil Procedure, Rule 8(2) requires that a pleading

must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief;…"  The pleading must give the Defendant fair notice of what the

claim is … and the grounds upon which it rests.  See *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47

(1957).  Factual allegations must be enough to raise a right to relief above a

speculative level.  Id. 555, (quoting 5 C. Wright & A. Miller, Federal Practice and

Procedure § 1216, 235-236 (3d ed. 2004)).  In appraising the sufficiency of a

complaint, the accepted rule is the complaint should not be dismissed unless it

appears beyond doubt the plaintiff can prove no set of facts in support of his claim

to entitle him to relief.  See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A

complaint should be dismissed pursuant to Rule 12(b)(6) only where "it is clear

that no relief could be granted under any set of facts that could be proved

consistent with the allegations."  See *Collier v. William Penn School District*, 956

Fed. Supp. 1209, 1211 (E.D. Pa. 1997)(Quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

Simplified notice pleading is made possible by the liberal opportunity for discovery and pretrial procedures set forth in the rules.  See *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957).  A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683).  All well pleaded factual allegations in the complaint are assumed to be true and viewed in the light most favorable to the plaintiff.  See *Collier v. William Penn School District*, 956 Fed. Supp. 1209, 1211 (E.D. Pa. 1997 *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S. Ct. 1843, 1848-49, 23 L. Ed. 2d 404 (1969).

## II.  Plaintiffs' claims under the EEOA are valid and should be redressed

The Equal Educational Opportunities Act (EEOA) provides in relevant part, "No State shall deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin, by—

(b) the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system;…".  See Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1703.

The School District is an educational agency under 20 U.S.C. § 1703 and 20 U.S.C. § 1720. Indeed, the EEOA expressly contemplates "local educational agencies," like the School District, in defining an "educational agency." *See* 20 U.S.C. §1720(a) and §1720(b).  There is ample historic evidence that St. Paul Public Schools practiced deliberate segregation. The St. Paul School Board action of 1857 required the segregation "whenever thirty pupils of African descent apply for instruction, the Secretary is authorized to employ a teacher for the same." *St. Paul Weekly Pioneer and Democrat, Nov 5, 1857;* Spangler, *33-34.* Various forms of that official policy continued in the years and decades that followed.  The segregation set in motion by such deliberate policies and the housing patterns that reinforced such segregation have continued unabated to today.  As recently as this year the Minnesota Supreme Court in <u>*Cruz-Guzman v. State of Minnesota,*</u> 916 N.W. 2d 1 (Minn. S. Ct., 2018) noted that Plaintiffs' complaint contained "copious data demonstrating a 'high degree of segregation based on race and socioeconomic status' in Minneapolis and Saint Paul public schools.  The public schools in Minneapolis and Saint Paul that appellants' children and other school-age children attend are "disproportionately comprised of students of color and students living in poverty, as compared with a number of neighboring and surrounding schools and districts." Id. 5.

The comments of the science teacher and the subsequent actions of the assistant principle are vestiges of that dual school system. The instinctual reliance on racial distinction to explain and deal with a behavioral problem in the first instance and attempt to justify such racist comments by a hastily conducted internet search in the second demonstrate that the educational institution has not even taken steps necessary to remove the most visible signs of a system constructed on a foundation of racial distinction and division.  The well-documented fact that not one, but two adults charged with educating the children of the school district believed that these were appropriate words and actions to deal with a situation as mundane as classroom misbehavior, is the best evidence of the inadequacy of the educational agency's efforts to remove the aforementioned vestiges of a segregated system.

### III.  Defendant's actions give rise to valid, actionable claims under Title VI.

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  An overt and noncontextualized statement in an open classroom of a theory of racial inferiority is quintessential discrimination in that it deliberately or recklessly creates emotional and psychological barriers to learning.  It is unrealistic to assume that all students,

7

regardless of race, are on equal footing to process information and think critically about that information after hearing such a hurtful statement regarding the academic and behavioral inferiority of a small group of students in that classroom.

Title VI defines "program or activity" as to include local educational agencies. 42 U.S.C. § 2000d-4a(2)(B). As a recipient of federal funding, the Defendant is subject to Title VI and the relevant regulations thereunder. Federal regulations promulgated under Title VI forbid the Defendant from subjecting individuals to discrimination because of race or color that have the effect of defeating or substantially impairing accomplishment of the objections of the educational program with respect to individuals of a particular race or color. See, e.g., 34 C.F.R. §§ 100.3. Defendant's actions created a permanent impression in the minds of all the students in the classroom that the teacher subscribed to and endorsed the theory of relative racial inferiority/superiority. All subsequent class participation within that classroom is likely to viewed through the lens of those assertions. Every time T.S.V. contributes to class discussions, T.S.V. will likely contemplate whether the merits of any such contribution will be judged by peers and the teacher and whether they will be devalued due to the theory of racial inferiority. That constant consideration, along with risk/benefit analysis to which it will naturally give rise, and all the mental gymnastics that it entails, will impair

T.S.V.'s ability to meaningfully participate in the classroom and might lead those around T.S.V. to discount the ideas and views T.S.V. contributes.

The Defendant is prohibited from discriminating against the Plaintiffs, including by allowing employees to make statements regarding Plaintiff's child's race and color and by providing unequal education services on the basis of race and color. Not only are the teacher's statements of the precise nature that Title VI sought to avoid, but the lasting effect of such statements on the integrated classroom creates unequal education by a creating an artificial achievement barrier between those who are thought to be inferior and those thought to be relatively superior. Harassment does not need to be targeted at a particular complainant in a hostile environment case. See *Hall v. Gus Construction Co.*, 842 F.2d 1010, 1015 (8th Cir. 1988). The science teacher's hurtful comments may not have meant to target T.S.V. specifically, but the affect of creating a hostile environment based on race still occurred and was validated and endorsed by the assistant principal and then the school district.

In a case with very similar facts, the court ruled against a Rule 12(b)(1) and (6) motion to dismiss holding, "Mindful that " 'the burden of establishing a prima facie case ... is not onerous,' " *id.* at 270-71 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), we conclude that plaintiffs have adduced sufficient evidence to establish a prima facie case for

purposes of their Title VI and the NJLAD claims of racial discrimination." See

_L.L. v. Evesham Township Bd. of Ed._, 710 Fed. Appx. 545, 549 (2017). The court

goes on to state, "The complaint about the teacher's purported tacit acceptance of

the student's use of a racial epithet and the other complaints, if proved at trial, are

sufficient to support an inference that the School District's actions were

discriminatory. Accordingly, we conclude that plaintiffs adduced a prima facie

case of discriminatory treatment under Title VI and the NJLAD." Id. 549.

The comments made by the Defendant's employee teaching the science class

upset and humiliated Plaintiff T.S.V. and the Defendant's failure to take

appropriate actions in the aftermath of those comments served to prevent the

Plaintiffs from receiving the same benefit of the Defendant's educational program

and services in direct violation of the regulations. See 34 C.F.R. §§

100.3(b)(1)(iii) – (iv) and (vi). After allowing months for concluding an

investigation and implementing corrective measures and actions the Plaintiffs,

seeing none, moved to a different educational institution looking for a better

educational environment in which to learn.

To determine whether the actions of the Defendant rose to the level of

creating a hostile educational environment the Court must look at all the

circumstances. See _Harris v. Forklift Systems, Inc._, 114 S. Ct. 367, 23 (1993).

The circumstances may include the frequency of the discriminatory conduct, the

10

severity, whether it was physically threatening or humiliating, or a mere offensive utterance.  Id. 23.  No single factor is required.  Id. 23.  In its July 5, 2018, Memorandum of Findings, the City of Saint Paul's Human Rights Division concluded evidence existed to suggest a Title VI violation had occurred in this matter using the investigative standards set forth in the Department of Education Office of Civil Rights ("OCR") Notice of Investigative Guidance entitled "Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance" as published in the Federal Register, Vol. 59 No. 47, on Thursday, March 10, 1994.  The notice states "To establish a violation of title VI under the hostile environment theory, OCR must find that: (1) A racially hostile environment existed; (2) the recipient had actual or constructive notice of the racially hostile environment; and (3) the recipient failed to respond adequately to redress the racially hostile environment."  Looking at all the circumstances, the offensive comments from the teacher that humiliated Plaintiff T.S.V. and caused T.S.V. to leave the classroom, the comments from the assistant principal validating and supporting those offensive comments and attempts to prove them as correct and substantiated with scientific evidence from the internet regarding the achievement gap, and then the Defendant's failure to respond or implement corrective action with Plaintiffs, the Defendant was on notice of the actions of the teacher and assistance principal, all the actions and inactions accumulate to create a

hostile educational environment with no adequate response.  See *Harris v. Forklift Systems, Inc.*, 114 S. Ct. 367, 23 (1993).  The Court should construe the facts in the light most favorable to the Plaintiff.  See *Zeno v. Pine Plains Central School Dist.*, 702 F. 3d 655, 659 (2012) (Quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 51 (2d Cir. 2012).

The Defendant argues in its memorandum of law that Title VI only prohibits intentional discrimination.  See Def. Memo. Pg. 10.  We disagree, unintentional discrimination and disparate impact discrimination are both prohibited by Title VI and the underlying regulations.  "Under these circumstances, it must be concluded that Title VI reaches unintentional, disparate impact discrimination as well as deliberate racial discrimination."  See *Guardians Assn. v. Civil Svc. Comm'n*, 483 U.S. 582, 593 (1983).  The Court in its opinion explained its different interpretation of the *Bakke* case as cited by the Defendant.  The Court held, "The Court of Appeals recognized this, but was of the view, as are respondents, that *University of California Regent v. Bakke, supra,* had confined the reach of Title VI to those programs that are operated in an intentionally discriminatory manner. For two reasons, I disagree with this reading of *Bakke.*"  Id. 589.  Therefore, we submit that the discrimination need not be intentional and the regulations forbid disparate impact discrimination.  However, the Plaintiffs believe the racial comments spoken by the science teacher to a class of 5th grade students and then reaffirmed and

endorsed by the assistant principle were intentional as was the failure to take corrective measures by the administration of the school. But even if the comments and the endorsement of those comments were somehow unintentional, they created a disparate impact on the education of Plaintiff T.S.V. and are therefore actionable under Title VI and its regulations.

The Plaintiffs have met all four of the standards set forth in _Davis_. See _Davis v. Monroe County Board of Education_, 526 U.S. 629 (1999). A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment. See _Zeno v. Pine Plains Central School Dist._, 702 F. 3d 655, 666 (2012) (Quoting _Hayut v. State University of New York_, 352 F.3d 733, 750 (2$^d$ Cir. 2003). If allowed the opportunity for discovery, the Plaintiffs will gather support to prove that the Defendant acted with deliberate indifference towards the tragic comments made in the 5th grade class on June 8, 2017, which were further justified and endorsed by the assistant principal with her comments, display of internet statistics and her misguided request for T.S.V. to fill out the behavioral reflection form, which then were perpetuated by the lack of action on behalf of human resources or other school district administrators from June until August 2017.

The _Zeno_ court went on to state "a failure to respond", See _Hayut v. State University of New York_, 352 F.3d 733, 751 (2$^d$ Cir. 2003), "a response that "only follows after a lengthy and unjustified delay,"" _id._ (internal quotation omitted), and

"a response that "amount[s] to deliberate indifference to discrimination,"" Quoting _Gebser v. Lago Vista Indep. Sch. Dist._, 524 U.S. 274, 290 (1998), "have all been found inadequate." Id.  The failure to keep the parents informed of the ongoing investigation and the failure to take any remedial action whatsoever with the students who heard the comments or the employees who made and then endorsed them absolutely constitute deliberate indifference by the Defendant.

The Memorandum of Findings by the Saint Paul Department of Human Rights dated July 5, 2018, concluded, "When Complainant Father and Complainant Daughter's mother brought these racially harassing incidents to the attention of the school administrative staff, appropriate actions were not taken. Complainant Daughter's mother proposed a very reasonable resolution, but the school declined to accept the resolution. The Assistant Principal received no correction for her actions. Complainants were not updated with the results of the investigations nor were they informed of the Respondent's actions in response. Complainant Daughter did not receive a formal apology from the Science Teacher until months after the incident, and when she did, the card was left blank suggesting a lack of sincerity. The Assistant Principal attempted to justify her behavior when apologizing to Complainants, also suggesting a lack of sincerity. The behavior of all of the school's staff after the racially harassing incidents failed to rectify the situation or show remorse for what had happened.  Moreover, the

Respondent took no action to address the hostile environment created for all students including the Complainant Daughter. Thus, Respondent both created and then sustained a racially hostile education environment".  Therefore, the official investigation agrees Defendant created a hostile environment and then showed deliberate indifference towards the problem.   Therefore, Plaintiffs met the fourth element of _Davis_.

The actions by the Defendant were severe, pervasive and objectively offensive.  An "isolated incident" can create a hostile environment if the incident is "extremely serious".  See _Boyer-Liberto v. Fontainebleau Corporation_, 786 F. 3d 264, 277 (4th Cir. 2015).  The status of the harasser may be a significant factor.  Id. 278.  Courts have held that a supervisor's harassment affects the work environment much more than harassment by a co-equal.  See _Rodgers v. W.-S. Life Ins. Co_., 12 F.3d 668, 675 (7th Cir. 1993).  The comments made during the 5th grade science class about academic inferiority of African Americans were made by a teacher and then validated by an assistant principal.  Certainly these were people T.S.V. and the other students who heard the comments had been taught by their parents and others to respect and hold in high esteem.  This was further exacerbated by the request to fill out the behavioral reflection form and then the failure of the school district to take any meaningful actions to apologize, correct or dispel the idea that

T.S.V. would suffer a more difficult academic career than similarly situated white students.

## IV. Defendant violated the 14th Amendment of the U.S. Constitution.

The equal protection clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.  The due process clause of the Fourteenth Amendment of the United States Constitution provides that no State "shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend XIV, § 1.

Students in Minnesota are entitled to receive an appropriate public education through the age of 21. See Minn. Stat. § 120A.20, subd. 1. This statutorily created right qualifies as a property interest protected by the due process clause of the Fourteenth Amendment.  The Plaintiffs properly pled violations of the Fourteenth Amendment including both equal protection and due process violations in their Complaint.  See Pl. Compl. Para. 52-61.  Plaintiffs pled and herein argue that due to the aforementioned actions towards the Plaintiffs the Defendant school district is liable for violations of the Plaintiffs' constitutional rights under 42 U.S.C. § 1983. See Pl. Compl. Para. 60.

The court in _Monell_, states that although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a

deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional  deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels. See *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-691 (1978)(Qouting Mr. Justice Harlan, writing for the Court, said in *Adickes v. H. Kress & Co.,* 398 U. S. 144, 398 U. S. 167-168 (1970)).

However, the *Monell* court goes on to conclude that a violation of official policy or custom is required.  Id. 694.  Yet, the court does interestingly state, "Since this case unquestionably involves official policy as the moving force of the constitutional violation found by the District Court, *see supra* at 436 U.S. at 660-662, and n. 2, we must reverse the judgment below. In so doing, we have no occasion to address, and do not address, what the full contours of municipal liability under § 1983 may be. We have attempted only to sketch so much of the § 1983 cause of action against a local government as is apparent from the history of the 1871 Act and our prior cases, and we expressly leave further development of this action to another day."  Id. 695.  Therefore, by its own admission the *Monell* court did not fully vet the official policy or custom issue.

The assistant principal we assume, without the benefit of discovery or depositions, followed a procedure and/or an official policy when she had T.S.V. fill out a Behavioral Reflection Form.  Also, the discussion of a study such as the achievement gap could easily leave an 11-year old in 5th grade to conclude the study and the mention of it by the science teacher and the support of those comments by the assistant principal was a school policy or custom.  The impression would have further been confirmed by the request to fill out the Behavioral Refection Form.  Finally, for months following this horrible day at school the Defendant school district did little to correct or remedy the impressions created by its employee and one of its administrators and the procedural requirement to fill out this behavior form signaling T.S.V. had somehow violated a behavioral rule or expectation.  We submit these actions are indicative of an unspoken and unwritten policy of tolerance of racial discrimination.  U.S. Const., amend XIV, § 1.  We do not disagree that the Defendant has written policies against racial discrimination but when faced with a clear and egregious violation of those policies by an employee and an administrator, the Defendant took no meaningful corrective action.  This is deliberate indifference to the spirit of the policies.  Id.

The Defendant makes a misguided argument that since T.S.V. was not expelled, suspended, or otherwise prohibited from attending school at the

Defendant school district and Plaintiff Dennis A. Verrett, Jr. voluntarily moved T.S.V. to a different school and school district, T.S.V. was somehow not deprived of the benefit of the public education offered by the Defendant.  See Def. Memo. Pg. 22-23.  The Defendant by creating a hostile educational environment through its actions and inactions caused the Plaintiffs to believe the only way T.S.V. would benefit from a discrimination free learning environment and have an equal opportunity to participate in classroom discussion and activities was to move to a different school and school district.  See _Boyer-Liberto v. Fontainebleau Corporation_, 786 F. 3d 264, 277 (4th Cir. 2015).  Defendant did violate the Plaintiffs' Fourteenth Amendment rights by not giving this egregious behavior the attention needed to implement the corrective remedies necessary to make sure all the students present in the classroom and both the teacher and assistant principal would clearly understand that this was inappropriate and would not happen again. U.S. Const., amend XIV, § 1.  As stated earlier, students in Minnesota are entitled to receive an appropriate public education through the age of 21. See Minn. Stat. § 120A.20, subd. 1.  After months of communicating with the Defendant and seeing no meaningful actions taken to correct the discriminatory remarks heard by the 5th grade class and T.S.V., Plaintiff Dennis A. Verrett, Jr. was well within his rights to conclude T.S.V. would receive a better chance at achieving academic excellence at a different school district.

## V.  Defendant violated the Minnesota Human Rights Act.

The Minnesota Human Rights Act ("MHRA") provides that "[i]t is an unfair discriminatory practice to discriminate in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of race, color, creed, religion, national origin, sex, age, marital status, status with regard to public assistance, sexual orientation, or disability, or to fail to ensure physical and program access for disabled persons." Minn. Stat. § 363A.13, subd. 1.

The Plaintiffs' complaint properly pled the egregious behavior of the teacher and assistant principal as endorsed and validated by the failure of the school district to take any meaningful corrective action were violations of the MHRA. See Pl. Compl. Para. 70-76.  The _Mumid_ court denied a Rule 12(b)(1) and (6) motion to dismiss stating, "The Court declines to dismiss the Complaint on the grounds advanced by the Institute at this early stage of the proceedings. The Plaintiffs have adequately noticed their cause of action in the Complaint, and should be allowed discovery to prove intentional discrimination by way of direct evidence, thereby obviating the need to meet the _McDonnell Douglas_ test."  See _Mumid v. Abraham Lincoln High Sch._, 618 F. 3d 789,  (8th Cir. 2010).  The plaintiffs in the _Mumid_ court case alleged both Title VI claims and MHRA claims against an educational institution very similar to the case at bar.  If construed in the

20

most favorable light to the Plaintiffs and if given the opportunity for discovery, the Plaintiffs have met their burden to properly and adequately pled violations of the MHRA by the Defendant and should be permitted to move forward.

## VI.  Defendant violated the Saint Paul Human Rights Ordinance.

Section 183.02(9) of the Saint Paul Human Rights Ordinance (the "Ordinance") defines discrimination to include "all unequal treatment of any person by reason of race, creed, religion, color, sex, sexual or affectional orientation, national origin, ancestry, familial status, age, disability, marital status or status with regard to public assistance." Saint Paul, Minn. Code § 183.02(9). The Ordinance provides that it is unlawful to discriminate in any manner with respect to access to, or use or benefit from, the services and facilities provided by an education institution. Saint Paul, Minn. Code § 183.05(1).  The official investigation set forth in the July 5, 2018, Memorandum of Findings promulgated by the Saint Paul Department of Human Rights, herein incorporated by reference, concluded the Defendant violated § 183.02(9) by the racial comments made by its employee and validated by its assistant principal and then endorsed by the deliberate indifference of the organization through its failure to take meaningful corrective measures in a timely manner.  The Plaintiffs have properly plead and adequately noticed the Defendant in compliance with the Rule 8(2) requirements of notice pleading of the Defendant violations of § 183.02(9) and supported those

allegations with facts, which if true will entitle Plaintiffs to relief under § 183.02(9) and the other civil rights laws cited above.

## VII.  Plaintiffs' Response to Defendant's Claim that Verrett Lacks Standing to Assert Individual Claims.

Regarding the issue of lack of standing asserted against Plaintiff, Dennis A. Verrett Jr. ("Verrett"), Defendant's assertions fail on multiple levels and for multiple reasons.

Defendant correctly identifies the burden of Plaintiff Verrett to demonstrate that he has satisfied the *injury in fact* requirement, but thereafter fails to engage in an in-depth analysis of why such is wanting in this matter. The U.S. Supreme Court has held that, to satisfy the injury in fact requirement, a party seeking to invoke the jurisdiction of a federal court must show three things: (1) "an invasion of a legally protected interest," (2) that is "concrete and particularized," and (3) "actual or imminent, not conjectural or hypothetical." See *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The most obvious example of Verret's injury in fact is that he has had to undertake the additional and unanticipated expense of relocating his family so that his children could attend a school that does not teach racial inferiority.  In order to protect T.S.V.'s interests in being free from discrimination, Verrett moved his family from a home he rented with an option to buy in St. Paul to a home he

22

purchased in Monticello, Minnesota.  The increased cost of the housing, the cost of the move, and the losses suffered as a result of a rapid and unanticipated relocation of his business were all costs of this relocation.  These are hard costs and financial losses associated with this move motivated by his need to safeguard a legally protected interest of his daughter, precisely the type of concrete and particularized damages with which courts have not struggled.

Verret also regularly volunteered at the school and therefore felt a direct impact of Defendant's conduct unlike most parent claimants. As noted in the Memorandum of Findings:

> *"Complainant Father regularly spent time at the school volunteering prior to the racial harassment. . .Because Respondent no longer felt that the school was welcoming towards all races and wanted to create an equal and just educational environment, Complainant Father felt uncomfortable both sending his daughter to school there and participating in school activities as a parent there."*

This is precisely the scenario found in <u>Walker v. Ford Motor Co</u>., 684 F.2d 1355, 1358-59 (11th Cir. 1982)(the court found a hostile environment where racial harassment made plaintiff feel "unwanted and uncomfortable in his surroundings" even though the harassment was not directed at him.) Verret's loss of comfort in participating in school activities, an activity to which he was committed to maintain a direct role in his child's education is yet another way that his injury was real and direct.

In addition, Verrett has an unrestricted right to instill in his child, T.S.V., values consistent with his own, such as racial equality and non-discrimination based on race. The actions of the Defendant have interfered with that right and has introduced a false narrative of racial inferiority.

And finally, there is, the more speculative loss suffered by Verrett that will arise from the long-term adverse effects of discrimination on T.S.V. and her academic and career trajectory. These types of damages, while likely more significant and substantial in the long-term, are by their very nature speculative because they are yet to occur. The U. S. Supreme Court has, however, been relatively forgiving in this regard. The Court has held that economic injury need not have already occurred but can result from policies that, for example, are likely to deprive the plaintiff of a competitive advantage or a bargaining chip. See _Clinton v. New York,_ 524 U.S. 417, (1998) at 432-34 (finding cooperative has standing to challenge veto of tax benefit enacted to foster ability to purchase processing plants); _Association of Data Processing Service Organizations Incorporated v. Camp,_ 397 U.S. 150, 154-56 (1970) (data processing service providers have standing to challenge decision to permit banks to provide such services to other banks).

 In _Clinton v. New York_, for instance, the Court held that New York had standing to challenge the veto of legislation permitting the state to keep disputed

24

medicaid funds. *Clinton,* 524 U.S. at 432-33. The veto left the state's ability to retain the funds uncertain, subject to the outcome of a request for a waiver. Despite this uncertainty, the Court regarded the "revival of a substantial contingent liability" sufficient to confer standing. *Id.* 523. How all this relates back to Verrett and not merely T.S.V. is a matter of considering increased educational expenses due to ineligibility for scholarships or less expensive colleges or universities and decreased earning potential.  Both of these potential burdens would have a direct economic impact on Verrett who will likely need to bear the brunt of increased education expenses and any delay in T.S.V.'s financial independence.

Defendant claims that courts have "consistently concluded" that parent's lack standing to assert claims on their behalf under the EEOA and Title VI.  What Defendant failed to mention in that regard is that all such courts have been in circuits other than the Eighth Circuit and that those cases are not precedence for this Court.  A closer review of cases cited, such as *Webb v. Susquehanna Tp. Sch. Dist.*, 93 F.Supp.3d 343 (M.D. Pa. 2015) focus as much on deficiencies of pleadings as much as it does any strict limitation on standing under Title VI. Unlike *Webb*, Verrett is alleging *injury in fact* that was well-documented in Plaintiffs' pleadings and therefore, contrary to the Defendant's contentions, has standing to make direct claims in this matter.

## CONCLUSION

The court must view the facts as true and in the most favorable light to the Plaintiffs.  Motions to dismiss under Rule 12(b)(1) and (6) are rarely granted and only if the facts and violations alleged in the pleadings could not possibly set forth a claim that would entitle the plaintiff to relief.  The Plaintiffs should be allowed to move forward with their claims and conduct discovery to obtain direct evidence necessary to prove their properly and adequately plead claims against the Defendant and obtain the relief they seek.

RESPECTFULLY SUBMITTED,

Dated:  October 26, 2018                    JOSLIN & MOORE LAW OFFICES, P.A.

                                              __/s/ Patrick B. Moore_____
                                              Patrick B. Moore, #252384
                                              221 NW Second Ave.
                                              Cambridge, MN  55008
                                               (763) 689-4101
                                              pbmoore@joslinmoore.com

Dated: October 26, 2018                     STROOTMAN LAW OFFICE, P.L.L.C.

                                              __/s/ Gary W. Strootman_____
                                              Gary W. Strootman (#252414)
                                              5701 Shingle Creek Pkwy, Suite 110
                                              Minneapolis, MN  55430
                                              (612) 588-0488
                                              gary@strootmanlaw.com

*Attorneys for the Plaintiffs*