UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dennis A. Verrett, Jr., individually and as parent and next friend of T.S.V., | Civil File No: 0:18-02513-DSD-BRT |
| Plaintiffs, | |
| vs. | **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |
| Independent School District #625, | |
| Defendant. | |

## INTRODUCTION

Verrett's claims must be dismissed. He lacks standing to proceed on the EEOA claim in any capacity and on every claim in his individual capacity. Moreover, the isolated comments and SPPS's response to them alleged in the Complaint and St. Paul Human Rights Division's report simply do not state a viable claim.

## ARGUMENT

**I.  Verrett Relies on the Incorrect Standard of Review.**

Verrett misstates the standard of review for Rule 12 motions, relying on *Conley v. Gibson*'s "no set of facts" standard. 355 U.S. 41, 45–46 (1957). *See* Plaintiffs' Reply Memorandum at 4–5 [Doc. #11] (hereinafter "Resp."). But *Bell Atlantic Corp. v. Twombly* overruled that standard and requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 563, 570 (2007). Verrett's reliance on *Conley* undercuts his arguments that Plaintiff's claims are sufficient to survive a motion to dismiss. They are not.

## II. Verrett Lacks Standing Under the EEOA.

Verrett lacks standing to assert an EEOA claim on behalf of T.S.V. Standing requires that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted). The EEOA authorizes only prospective equitable and injunctive relief. *See* 20 U.S.C. § 1713; *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 799 (8th Cir. 2010) (concluding that only equitable relief is available under EEOA). Because T.S.V. is no longer a student in the District, Compl. ¶ 25, her alleged injuries cannot be redressed under the EEOA. *Mumid*, 618 F.3d at 797 (plaintiffs lacked standing under the EEOA because "[n]one of the plaintiffs currently attends [the defendant school] and none will ever return"). While this argument was not raised in SPPS's principal brief, standing is a "jurisdictional prerequisite" and is a "threshold issue that [courts] are obligated to scrutinize, sua sponte if need be." *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) (quotations omitted).

## III. SPPS Did Not Violate the EEOA.

Verrett argues that SPPS violated § 1703(b) of the Equal Educational Opportunities Act ("EEOA"), which prohibits the denial of an "equal educational opportunity" to an individual based on her race by "the failure of an educational agency which has formerly practiced such deliberate segregation to take affirmative steps, consistent with part 4 of this subchapter, to remove the vestiges of a dual school system." 20 U.S.C. § 1703(b); Resp. at 5. Plaintiff contends that there is "ample historic evidence"

2

that SPPS "practiced deliberate segregation" and that the teacher's and assistant principal's alleged comments are "vestiges of that dual school system." Resp. at 6–7.[1]

Despite Verrett's contention, his Complaint does not contain even a conclusory allegation that SPPS formerly practiced deliberate segregation. Thus, the Complaint lacks an essential element of a claim under § 1703(b).

Even if Verrett had pled deliberate segregation, the teacher's and assistant principal's alleged actions do not constitute a failure by SPPS to remove vestiges of a dual school system. 20 U.S.C. § 1703(b).[2] "The EEOA does not define 'vestiges of a dual school system.'" *Jackson v. Waller Indep. Sch. Dist.*, 2009 WL 3078489, at *12 (S.D. Tex. Sept. 24, 2009). Courts have turned to Congress's findings in the EEOA for a definition of "dual school system" as "one 'in which students are assigned to schools solely on the basis of race, color, sex, or national origin.'" *Id.* (quoting 20 U.S.C. § 1702(a)(1)); *accord Bd. of Educ., Joliet Twp. High Sch. Dist. No. 204 v. Bd. of Educ., Lincoln Way Cmty. High Sch. Dist. No. 210*, 897 N.E.2d 756, 764 (Ill. 2008).

The few cases that have addressed claims under § 1703(b) have consistently focused the analysis of whether the defendant failed to remove "vestiges of a dual

---

[1] Plaintiff's citation to *Cruz-Guzman v. State of Minnesota*, 916 N.W.2d 1 (Minn. 2018), is misplaced. Resp. at 6. The quote from *Cruz-Guzman* comes from the complaint, which the court accepted as true on review of the denial of a motion to dismiss. 916 N.W.2d at 5. The court did not find that SPPS is, in fact, segregated.

[2] Verrett's Response offers no factual or legal support for the assertion that the teacher's and assistant principal's alleged actions constitute "vestiges of a dual school system," and his argument on that point is waived. *See Butler v. Crittenden Cnty.*, 708 F.3d 1044, 1051 (8th Cir. 2013) ("This court regularly declines to consider cursory or summary arguments unsupported by facts or legal authorities . . . .") (quotation omitted).

3

system" on whether the alleged actions furthered (or resisted) integration within schools. *See Stanley v. Darlington Cnty. Sch. Dist.*, 879 F. Supp. 1341, 1412–14 (D.S.C. 1995) (stating that "[w]here officials have previously operated a dual school system, their actions must be judged according to whether they hinder or further desegregation"), *reversed in part on other grounds*, 84 F.3d 707 (4th Cir. 1996); *Jackson*, 2009 WL 3078489, at *1, 13, 15 (concluding that alleged lack of adequate funding and dilapidated facilities at "historically black elementary school" did not constitute vestiges of a dual school system under § 1703(b) because "the focus of § 1703(a) to (e)" is to "address[] racially discriminatory student assignment plans"); *Bd. of Pub. Educ. for City of Savannah & Cnty. of Chatham v. State of Georgia*, 1992 WL 322299, at *1 (S.D. Ga. Oct. 16, 1992) (concluding actions of state in "creating and fostering the dual school system" and "consistently resisting any efforts at dismantling that dual system" showed violation of § 1703(b)).

Interpreting the phrase "vestiges of a dual school system" to include isolated comments of the kind alleged by Verrett, occurring in an admittedly integrated school, would be a breathtaking expansion of the EEOA. The remedies available under the EEOA confirm that "vestiges of a dual school system" should not be interpreted in this way. The EEOA provides exclusive remedies, 20 U.S.C. § 1713, all of which are addressed to student placement issues or the opening and closing of schools.[3]

---

[3] There is a catchall provision that must be interpreted in light of the enumerated remedies. *See U.S. v. Mendoza-Alvarez*, 79 F.3d 96, 99 (8th Cir. 1996).

The allegations in this case do not concern actual segregation and cannot show a failure by SPPS to take affirmative steps to remove the vestiges of a dual school system. Thus, Plaintiff's EEOA claim must be dismissed.

## IV. Verrett Fails to State a Plausible Claim Under Title VI.

Verrett asserts two arguments in support of the Title VI claim: (1) that Title VI claims can proceed on a disparate-impact theory under both Title VI and regulations promulgated thereunder, and (2) that the alleged actions and inactions of the teacher, assistant principal, and District constituted intentional discrimination in violation of Title VI. Both arguments lack merit.

In support of the first argument, Plaintiff cites *Guardians Association v. Civil Service Commission of City of New York* for the proposition that "'Title VI reaches unintentional, disparate impact discrimination as well as deliberate racial discrimination.'" Resp. at 12 (quoting 463 U.S. 582, 593 (1983) (opinion of White, J.)). However, the quotation comes from section II.B of Justice White's opinion, which section was not joined by any other Justice. 463 U.S. at 584, 593. Only Justice Marshall agreed that Title VI reaches disparate-impact discrimination. *Id.* at 584 n.2; *Id.* at 623–24 (Marshall, J., dissenting). The Court in *Alexander v. Sandoval* made clear that only claims of intentional discrimination are viable under Title VI. 532 U.S. 275, 281 (2001) ("Title VI itself directly reaches only instances of intentional discrimination.") (quotation omitted).

Additionally, Plaintiff argues that violations of regulations promulgated under Title VI, which prohibit disparate-impact discrimination, are actionable. *See* Resp. at 8,

5

10 (citing 34 C.F.R. § 100.3). But the Supreme Court has held that there is no private right of action under so-called "disparate-impact regulations" (and has strongly suggested that such regulations are invalid to the extent that they proscribe activities that are not prohibited under Title VI). *See Sandoval*, 532 U.S. at 281–82, 293 ("Neither as originally enacted nor as later amended does Title VI display an intent to create a freestanding private right of action to enforce regulations promulgated under § 602 [of Title VI, i.e., 42 U.S.C. § 2000d-1]. We therefore hold that no such right of action exists.").[4] Thus, 34 C.F.R. § 100.3 is invalid to the extent that it exceeds the scope of Title VI. Regardless, *Sandoval* makes clear that Plaintiff cannot state a Title VI claim for disparate-impact discrimination under the regulation. He must show intentional discrimination. *See Mumid*, 618 F.3d at 794 (stating that "the district court observed correctly that Title VI prohibits only intentional discrimination" and "[p]roof of disparate impact is not sufficient").

Verrett's second argument appears to be that the alleged actions of the teacher and assistant principal and SPPS's subsequent alleged failure to take "adequate" remedial action constituted intentional discrimination for which SPPS is liable under Title VI. *See* Resp. at 12–13. This argument also fails.

Regardless of whether the teacher's and assistant principal's actions constituted intentional discrimination, the key question for determining SPPS's liability under Title VI is whether it acted with "deliberate indifference" under *Davis ex rel. LaShonda D. v.*

---

[4] The regulations at issue in *Sandoval* are functionally identical to the Department of Education regulation cited by Verrett here. *Id.* at 278; *compare* 34 C.F.R. § 100.3, *with* 28 C.F.R. § 42.104 *and* 49 C.F.R. § 21.5.

6

*Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). Plaintiff's Complaint fails to show sufficiently severe harassment and deliberate indifference on the part of SPPS. The cases cited by Plaintiff do not show otherwise.

As to the severity of the alleged harassment, Plaintiff argues that "[a]n 'isolated incident' can create a hostile environment if the incident is 'extremely serious'" and that the status of the harasser can show a greater severity of harassment. Resp. at 15 (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015), and *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). While those propositions may be true, both cases are distinguishable from the circumstances here. *See Boyer-Liberto*, 786 F.3d at 280 (finding sufficiently severe harassment where plaintiff's supervisor used "racial epithets to cap explicit, angry threats that she was on the verge of utilizing her supervisory powers to terminate [plaintiff]'s employment"); *Rodgers*, 12 F.3d at 674–76 (finding sufficiently severe harassment where plaintiff's supervisor harassed plaintiff on multiple instances, including by twice using the word "'n[*****]'" in plaintiff's presence, stating that "'[y]ou black guys are too fucking dumb to be insurance agents,'" and informing plaintiff that supervisor's boss had advised him "not to hire any more black agents").[5]

---

[5] Verrett also cites the unpublished decision in *L.L. v. Evesham Township Board of Education*, 710 Fed. App'x 545 (3d Cir. 2017), to argue that the Title VI claim should survive a motion to dismiss. Resp. at 9–10. The statements quoted by Verrett are from a section of the decision reviewing summary judgment in which the court addressed the plaintiffs' "Title VI disparate treatment claims," contrary to the Supreme Court's holding in *Sandoval*. *Evesham*, 710 Fed. App'x at 548. Additionally, the harassment alleged in *Evesham* was more severe than that alleged here. 710 Fed. App'x at 548–49 (discussing white student's use of the word "'n*****'" in a classroom with one of the plaintiff

Title VI does not give rise to a federal lawsuit for every insensitive or inappropriate comment. Both sides have cited cases that draw the line between circumstances that allege conduct that may give rise to a Title VI claim and those that do not. It is clear from all of these cases that Verrett's allegations do not. Discovery will not change the nature of the alleged harassment that T.S.V. claims. Because it is clear that these allegations do not support a Title VI claim, the claim should be dismissed.

As to the deliberate indifference element, Verrett relies on *Zeno v. Pine Plains Central School District*, 702 F.3d 655 (2d Cir. 2012), to argue that SPPS's alleged "failure to keep the parents informed of the ongoing investigation" and "failure to take any remedial action" constituted deliberate indifference. Resp. at 14.[6] *Zeno* does not support this argument. *See* 702 F.3d at 667, 669–71 (concluding that district's response was deliberately indifferent to harassment—which included classmates calling plaintiff "a 'n[*****]' nearly every day" for over three years and multiple violent incidents and threats to plaintiff's life—because district delayed for over a year before implementing "non-disciplinary remedial action"; did not address racial bias or prejudice in attendance-optional remedial programming; and failed to investigate known harassment).

---

students, in response to which the teacher "smiled" and "walked out of the classroom"). *Evesham* is neither binding nor persuasive authority here.

[6] The standard for determining whether a school district's actions were deliberately indifferent is whether they were "clearly unreasonable in light of the known circumstances." *Zeno*, 702 F.3d at 666 (quotation omitted). Courts must defer to the decisions of school officials when weighing the adequacy of the response. *Id.* "[V]ictims do not have a right to specific remedial measures." *Id.*

In contrast, Verrett's allegations and the St. Paul Human Rights Division's report, which Verrett has adopted, incorporated, and re-affirmed[7] in his Complaint and Response, indicate that school officials communicated with T.S.V.'s parents, conducted an investigation, stated that the principal would conduct staff training to prevent future similar incidents once staff returned in the fall and were under contract, and would adapt procedures for notifying parents of incidents to be more communicative. Compl. Ex. A at 7–8. While not everything that Verrett or T.S.V.'s mother requested, this response is not clearly unreasonable, and that is the legal standard.

### V. Verrett's Fourteenth Amendment Claims Are Barred by *Monell* and Fail to Show Due Process or Equal Protection Violations.

Verrett concedes that the Supreme Court's decision in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), requires a deprivation of constitutional rights by an official policy or custom for a municipality or other local government unit to be liable under 42 U.S.C. § 1983. Resp. at 16–17. He further concedes that SPPS has a written policy that is contrary to the conduct he alleges. Resp. at 18. But he appears to argue that if he discovers an official "policy" or "procedure" that required the assistant principal to have T.S.V. complete a Behavioral Reflection Form, such policy or procedure could support liability for SPPS under § 1983. Resp. at 18.

However, Verrett has not alleged that a policy requiring a student to complete a behavior reflection form would violate Equal Protection or that any such policy or custom is facially unlawful in any way. Under Eighth Circuit law, "[a] plaintiff seeking to

---

[7] Resp. at 2.

9

establish municipal liability on the theory that a *facially lawful* municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (quotations omitted). Verrett has not alleged or argued that a policy or procedure under which the assistant principal was required to have T.S.V. complete a Behavioral Reflection Form was created by SPPS with deliberate indifference to its known or obvious consequences or that the known or obvious consequences of such policy or procedure would be a deprivation of T.S.V.'s constitutional rights. Thus, *Monell* bars the Fourteenth Amendment claims.

Regardless, Verrett has failed to allege either a due process or equal protection violation. As to Verrett's due process claim, he essentially argues that SPPS created a hostile educational environment and that Verrett therefore believed that his only choice was to "move to a different school and school district." Resp. at 19. But he offers no authority in support of this argument or to contradict the authority presented by SPPS in its principal brief that deprivations of the right to public education arise in the context of actual deprivations by districts of student access to education (e.g., suspensions, expulsions, transfers, and denials of enrollment) and not a voluntary choice to leave a district. Similarly, Verrett makes no substantive response to SPPS's arguments that the equal protection claim fails for the same reasons as the Title VI claim. Verrett's failure to provide substantive argument or authority in support of the due process and equal protection claims results in a waiver of the issues. *See Butler*, 708 F.3d at 1051.

**VI.   Verrett's MHRA Claim Does Not State a Plausible Claim for Relief.**

Verrett argues that he properly pleaded an MHRA claim, citing *Mumid v. Abraham Lincoln High School*, 618 F.3d 789 (8th Cir. 2010). Resp. at 20. While Verrett cites the Eighth Circuit decision in *Mumid*, the quote he references comes from an earlier decision of the district court in the same case, which was decided before *Twombly*. 2006 WL 640510, at *4 (D. Minn. Mar. 13, 2006). Thus, the district court opinion in *Mumid* has little value in determining whether Verrett's MHRA claim survives a motion to dismiss under the *Iqbal*/*Twombly* standard.

As discussed in SPPS's principal brief, Verrett's MHRA claim fails for the same reasons as the Title VI claim. He has offered no substantive argument or authority to the contrary. *See Butler*, 708 F.3d at 1051.

**VII.   Verrett Has Failed to Demonstrate a Viable Claim Under the St. Paul Ordinance.**

Verrett argues that his claim under the St. Paul Human Rights Ordinance (the "St. Paul Ordinance") satisfied the "Rule 8(2) requirements of notice pleading." Resp. at 21. Again, *Twombly* provides the correct pleading standard and Verrett has not satisfied that standard.

Moreover, Verrett has made no response to SPPS's arguments that his St. Paul Ordinance claim (1) is preempted by the MHRA, and (2) fails for the same reasons as the Title VI and MHRA claims. *See Butler*, 708 F.3d at 1051.

## VIII. Verrett Lacks Individual Standing.

Finally, Verrett argues that he has individual standing to assert the above claims based on several claimed "injuries in fact": (1) his relocation; (2) his "loss of comfort" in participating in school activities; (3) impairment of his "unrestricted right" to instill values in T.S.V.; and (4) the "more speculative loss" of "increased education expenses" for T.S.V. and "delay in T.S.V.'s financial independence." Resp. at 22–25.

But to have standing, a plaintiff "must have suffered an injury in fact" to a "legally protected interest" that is "concrete and particularized" and "actual or imminent" rather than "conjectural or hypothetical" and that is "causal[ly] connect[ed]" to the defendant's conduct. *Lujan*, 504 U.S. at 560 (quotations omitted). Verrett's claimed injuries are not legally protected interests under any of the asserted claims, as discussed in SPPS's principal brief. Verrett has provided no substantive argument or authority to the contrary. *See Butler*, 708 F.3d at 1051.

## **CONCLUSION**

For the foregoing reasons and those stated in its opening papers, SPPS respectfully asks this Court to grant its motion to dismiss the Complaint with prejudice and to award its costs and disbursements.

                                            Respectfully Submitted,

                                            ARTHUR, CHAPMAN, KETTERING,
                                            SMETAK & PIKALA, P.A.

Dated: November 5, 2018          s/Colin S. Seaborg
                                            Sarah E. Bushnell (#326859)
                                            Colin S. Seaborg (#397309)
                                            500 Young Quinlan Building
                                            81 South Ninth Street
                                            Minneapolis, MN 55402-3214
                                            P: (612) 339-3500
                                            F: (612) 339-7655
                                            sebushnell@ArthurChapman.com
                                            csseaborg@ArthurChapman.com

                                            *Attorneys for Defendant*
                                            *Independent School District #625*