```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                     Civil No. 18-2513(DSD/BRT)
```

Dennis A. Verrett, Jr.,
individually and as parent
and next friend of T.S.V.

       Plaintiffs,

v.                                                              **ORDER**

Independent School District #625,

       Defendant.

> Patrick B. Moore, Esq. and Joslin & Moore Law Offices, PA, 221 2nd Ave NW, Cambridge, MN 55008 and Gary W. Strootman, Esq. and Strootman Law Office, 4124 Quebec Ave. N, Suite 308, New Hope, MN 55427, counsel for plaintiff.
>
> Sarah E. Bushnell, Esq. and Arthur, Chapman, Kettering, Smetak & Pikala, PA, 81 South 9th Street, Suite 500, Minneapolis, MN 55402 and Colin Seaborg, Esq. and Bassford Remele, 100 South 5th Street, Suite 1500, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion to dismiss by Independent School District #625. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion is granted in part.

**BACKGROUND**

This discrimination dispute arises out of a June 8, 2017, incident at the Expo Elementary School for Excellence (Expo) in St.

Paul, Minnesota. Compl. ¶¶ 9, 13.

**I. The Parties**

Plaintiff Dennis A. Verrett, Jr. is the father of plaintiff T.S.V. Id. ¶ 9. On June 8, 2017, T.S.V., who is African-American, was a fifth-grader at Expo. Id. ¶ 13. Defendant Independent School District #625 (the District) operates Expo. Id. ¶ 3.

**II. The June 8, Incident**

On June 8, T.S.V. was one of three African-American students siting together in science class. Id. ¶ 15. At some point during the class instruction, the other two African-American students began socializing, disrupting the class. Id. The science teacher was unable to get the two students' attention. Id. Ex. A at V ¶ 9. The science teacher then "brought up" the educational achievement gap between white and African-American students. Id. ¶ 14. The teacher gestured with his hands to a group of white students and then to the group of African-American students to demonstrate the gap. Id. Ex. A at V ¶ 10. The teacher stated that the two African-American students' behavior was the cause of the achievement gap. Id. ¶ 15.

T.S.V. left the classroom crying. Id. ¶ 17. An unknown teacher noticed T.S.V. in the hallway, and escorted her to the assistant principal's office. Id. The assistant principal knew T.S.V. and invited T.S.V. into her office to calm the child down.

2

Id. Ex. A at V ¶ 15.

In the office, T.S.V. explained what the science teacher said. Id. T.S.V. mentioned the other students involved, and those students were called to the assistant principal's office to give their versions of the incident. Id. The science teacher also came to the office and explained his version of the events. Id. The science teacher allegedly told T.S.V. that "he did not mean to say that." Id. Ex. A at V ¶ 17.

The assistant principal subsequently showed T.S.V. online data and statistics regarding the existence of the achievement gap. Id. ¶ 17. The assistant principal directed T.S.V. to complete a behavioral reflection form, which is used at Expo to help students reflect on their behavior and articulate what they should do in the future if they encounter a similar situation. Id. ¶ 18. T.S.V. stated in the form that she felt hurt, confused, and frustrated by the science teacher's comment and that the incident was "really upsetting." Id. Ex. B. She also stated that a better thing to do in the future "is to tell my teacher or not even listen." Id. T.S.V. then returned to class. Id. Ex. A at V ¶ 21.

That same day, Verrett volunteered for his other child's, also an Expo student, class field trip. Id. ¶ 21. During the field trip, Verrett learned about the incident from another parent. Id. After the field trip, Verrett went back to Expo to find out what happened. Id.

Verrett encountered the assistant principal in the Expo parking lot. Id. ¶ 22. Verrett told her that he was displeased that Expo had not notified him about the incident. Id. The assistant principal answered a few of Verrett's questions, and told him that Expo would investigate the incident, but said that she could not share all the details at that time due to human resource constraints. Id. Ex. A. at V ¶ 31. The assistant principal then abruptly left to visit a family member in the hospital. Id. Ex. A. at V ¶ 36.

On June 9, 2017, Expo officials told Verrett and his wife, T.S.V.'s mother, that they would continue their investigation. Id. Ex. A. at V ¶ 37. In mid-June 2017, the Expo principal left Verrett a detailed voicemail ensuring him that similar incidents would not occur at Expo in the future. Id. Ex. A. at V ¶ 39. Verrett also spoke with the assistant superintendent of the District, who assured Verrett that Expo would follow proper procedures and conduct a proper investigation. Id. Ex. A. at V ¶ 38. The assistant superintendent told Verrett he could not disclose exactly what disciplinary actions would be taken. Id. On June 19, 2017, Expo officials privately met with the science teacher, but whether disciplinary action was taken against either the science teacher or assistant principal is not known. Id. Ex. A. at V ¶ 40.

On June 22, 2017, Verrett's wife asked Expo for an update.

4

Id. Ex. A. at V ¶ 41. The following day, the principal told her that he was unable to share any updates because the investigation was confidential, but he assured her that he would train his staff to better handle comparable situations in the future. Id. Ex. A. at V ¶ 42.

On July 3, 2017, Verrett's wife proposed the following resolution: (1) the science teacher formally apologize to T.S.V. and her parents; (2) Expo reaffirm its commitment to a positive learning environment free of discrimination; (3) Expo reaffirm best practices including parent notifications; and (4) the science teacher apologize to the parents of the other students in the class. Id. Ex. A. at V ¶ 44. Expo did not agree to the proposal. Id.

On July 6, 2019, the principal told Verrett's wife that the school would adapt the way in which it notifies parents. Id. Ex. A. at V ¶ 45. Later that day, Verrett's wife told the principal that she did not feel Expo had resolved the incident or accepted responsibility. Id. Ex. A. at V ¶ 46. The principal responded the following day that he intended to address the incident at the appropriate time, but that Expo staff was not under contract during the summer. Id. Ex. A. at V ¶ 47.

In mid-August 2017, Verrett withdrew T.S.V. from Expo and moved his family approximately an hour away. Id. ¶ 25. In the fall of 2017, T.S.V. and her mother met with Expo officials. Id.

At the meeting, the assistant principal stated that T.S.V. asked to see the online data and statistics regarding the achievement gap. Id. Ex. A. at V ¶ 51. T.S.V.'s mother became upset and briefly left the meeting. Id. Ex. A. at V ¶ 52. The science teacher gave T.S.V. candy and a card as an apology, but did not write anything in the card because he reported that he did not have time to do so. Id. Ex. A. at V ¶ 53.

**III. This Suit**

In mid-2018, plaintiffs filed a discrimination complaint against the District with the City of St. Paul, Department of Human Rights and Equal Economic Opportunity, alleging that the District's actions created a hostile education environment. Id. Ex. A. On July 5, 2018, the City of St. Paul issued a memorandum of findings, concluding that plaintiffs had alleged sufficient facts to establish probable cause that the District had created a hostile education environment in violation of the St. Paul Human Rights Ordinance and Title VI of the Civil Rights Act of 1964. Id. On July 17, 2018, the City of St. Paul issued a right-to-sue letter. Id.

On August 28, 2018, plaintiffs commenced this action raising claims under the Equal Educational Opportunities Act (EEOA), 20 U.S.C. § 1703, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.13, subdiv. 1, the St. Paul Human Rights Ordinance, St. Paul

6

Minn. Code § 183.02(9), the Fourteenth Amendment, and 42 U.S.C. § 1983. Plaintiffs bring this suit in Verrett's name individually and as next friend of T.S.V. Plaintiffs seek declaratory judgment, injunctive relief, and compensatory damages. The District now moves to dismiss.

**DISCUSSION**

**I.  Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings

under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, in addition to the complaint, the court properly considers the City of St. Paul's July 5, 2018, memorandum and findings, the right-to-sue letter, and the behavioral reflection form.

**II. EEOA**

The EEOA is a remedial statute designed to "specify appropriate remedies for the orderly removal of the vestiges of the dual school system." 20 U.S.C. § 1701(b). A "dual school system" is one "in which students are assigned to schools solely on the basis of race, color, sex, or national origin." 20 U.S.C. § 1702(a)(1). The remedies a court may fashion under the EEOA are limited to assigning students to certain schools, permitting students to transfer to certain schools, the construction and closing of schools, and the creation and revision of attendance zones or grade structures to ameliorate the effects of a dual school system. 20 U.S.C. § 1713.

"The EEOA describes six ways in which a State must not deny equal educational opportunity on account of race, color, or national origin." Mumid v. Abraham Lincoln High Sch., 618 F.3d 789, 796 (8th Cir. 2010). "The first five proscriptions clearly

8

are aimed at eradicating the lingering effects of segregation in the public school system." Id. The sixth prohibited practice is directed at language barriers. See id.

This case does not involve racially discriminatory student assignments or deal with the pernicious effects of past segregation. The complaint states that the Expo was integrated and does not state that the District operated a dual system.

Moreover, the remedies available under the EEOA will not redress plaintiffs' alleged injuries. T.S.V. has left the District, therefore, reassigning her to a new class or permitting her to transfer schools is impossible. In addition, the construction of new schools would be of no use to her. As a result, plaintiffs' claim under the EEOA must be dismissed.

**III. Title VI, MHRA, St. Paul Ordinance, and Equal Protection**

 **A. Standard**

Title VI provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. Individuals may sue under Title VI for intentional discrimination.[1] Alexander v.

---

[1] The court rejects plaintiffs' argument that Title VI prohibits disparate impact.

9

Sandoval, 532 U.S. 275, 280 (2001).

To state a Title VI claim under a racial hostility theory, a plaintiff must plead facts sufficient to support a reasonable inference that the defendant was "(1) deliberately indifferent, (2) to known acts of discrimination, (3) which occurred under its control." Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 782 (8th Cir. 2001). "[S]uch an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."[2] Davis as Next Friend of LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999). A school's response to an allegation of discriminatory conduct may not be "clearly unreasonable in light of the known circumstances." Id. at 648.

The MHRA prohibits discrimination "in any manner in the full utilization of or benefit from any educational institution, or the services rendered thereby to any person because of race, color, creed, religion, [or] national origin ...." Minn. Stat. § 363A.13, subdiv. 1. The St. Paul Human Rights Ordinance prohibits discrimination "in any manner with respect to access to, use of or benefit from any institution of education or services and facilities in connection therewith" and to "discriminate against a person enrolled as a student by excluding, expelling, or taking

---

[2] The Supreme Court has interpreted Title IX "consistently with Title VI." Barnes v. Gorman, 536 U.S. 181, 185 (2002).

10

other actions against them." St. Paul Minn. Code § 183.05(1-2). The Fourteenth Amendment prohibits a state from "deny[ing]... any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

"The MHRA is typically construed in accordance with federal precedent concerning analogous federal statutes ...." Mumid, 618 F.3d at 793. Similarly, Title VI and Fourteenth Amendment Equal Protection Clause claims are coextensive and are analyzed under the same analytical framework.[3] See United States v. Fordice, 505 U.S. 717, 732 n.7 (1992). As a result, the court will apply the Title VI standard to plaintiffs' MHRA, St. Paul Human Right Ordinance, and Equal Protection Clause claims.

**B. Merits**

Plaintiffs argue that they have pleaded a plausible claim under Title VI, the MHRA, the St. Paul Human Rights Ordinance, and the Equal Protection Clause. The court agrees, in part.

As a threshold matter, the MHRA preempts the St. Paul Human Rights Ordinance. Specifically, the MHRA provides the exclusive remedy for claims brought under §§ 363A.08-363A.19, and 363A.28, subdiv. 10 of the act. Plaintiffs' MHRA claim here is brought under § 363A.13, subdiv. 1, within the ambit of the MHRA's exclusive remedy provision. Moreover, § 363A.13, subdiv. 1 of the

---

[3] The parties do not object to the court applying Title VI to plaintiffs' St. Paul Human Rights Ordinance claim.

MHRA and the St. Paul Human Rights Ordinance prohibit nearly identical conduct. Courts have consistently concluded that a Minnesota statute, the Whistleblower Act, is preempted by the MHRA's exclusive remedy provision because, like here, it prohibits nearly identical conduct. See Williams v. St. Paul Ramsey Med. Ctr., Inc., 551 N.W.2d 483, 486 (Minn. 1996); see also Abraham v. Cnty. of Hennepin, 639 N.W.2d 342, 347 (Minn. 2002); Mudrich v. Wal-Mart Stores, Inc., 955 F. Supp. 2d 1001, 1027 (D. Minn. 2013). The court finds no reason why a Minnesota municipal ordinance would also not be preempted when providing analogues relief as the exclusive MHRA remedies given that "municipalities have no inherent powers ...." State v. Kuhlman, 729 N.W.2d 577, 580 (Minn. 2007). Accordingly, plaintiffs' St. Paul Human Rights Ordinance claim must be dismissed under the preemption doctrine.

As to the substance of plaintiffs' claims, the complaint alleges that the science teacher stated that the two African-American students' behavior was the cause of the educational achievement gap. This statement was given without context and appears to have been motivated by the students' disruptive behavior rather than a genuine desire to discuss matters of race and education with the entire science class. In addition, the teacher gestured with his hands singling out the African-American students to reinforce his point that their behavior was responsible for the

12

achievement gap.[4] The take-away from this experience for the entire young, fifth-grade class could very well have been that African-American students do not achieve academically at the same rate as white and other student groups because, as a group, African-American students are more prone to disruptive classroom behavior and academic failure. The fact that the comment came from the students' science teacher, a significant authority figure, only compounds the severity of the incident and the trauma T.S.V. claims to have endured. Indeed, the science teacher stated that he did not mean to make the comment, which strongly suggests that he knew it was inappropriate, particularly in light of the students' young age. The court finds that the science teacher's discriminatory conduct was sufficiently severe and offensive to plausibly state a Title VI claim.

Furthermore, the incident was not isolated to the teacher's conduct. The assistant principal exacerbated the incident by showing an already emotionally distraught T.S.V. data supporting the teacher's comment regarding the achievement gap. She also made T.S.V. complete a behavioral reflection form, which suggested that T.S.V. was somehow at fault for what happened in the classroom. Although the District argues that behavioral reflection forms are not disciplinary in nature, a fair reading of the form, which not

---

[4] The hand gesturing weighs against a finding that the comment was unintentional.

only asks for a student's relection, but how he or she could change their behavior in future, suggests otherwise. Indeed, the allegations support an inference that T.S.V. was exposed to discriminatory comments, shown data to support those comments, and punished for her reaction. As such, the complaint has pleaded sufficient facts showing that the discrimination was also pervasive.

Finally, there is no indication in the complaint that either the principal, assistant superintendent, or any Expo official took corrective measures to redress T.S.V.'s harm. The principal and assistant superintendent assured Verrett and T.S.V.'s mother that Expo staff would receive training and that they would never allow a similar situation to happen, but whether there was follow-through on those assurances is unclear at this time. Similarly, although the complaint states that Expo officials held a meeting with the science teacher in June of 2017, the outcome of that meeting and whether either he or the assistant principal were disciplined is unknown. Because the complaint alleges that the District failed to meaningfully respond to incident in the first instance, the court cannot conclude whether its response was reasonable under the circumstances. As such, plaintiffs have pleaded sufficient facts plausibly showing that the District was deliberately indifferent to the alleged discrimination. As a result, plaintiffs have pleaded a plausible claim under Title VI, the MHRA, and the Equal

14

Protection Clause.[5]

**IV. Section 1983 and Due Process**

    **A.    Standard**

Section 1983 permits individuals to sue states or state officials who act "under color of" state law for the "deprivation of any rights, privileges, or immunities secured by" federal law. 42 U.S.C. § 1983. "When a plaintiff is seeking to impose section 1983 liability on a local government body, the plaintiff must show that there is an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of a constitutional right." Marksmeier v. Davie, 622 F.3d 896, 902 (8th Cir. 2010). "Respondeat superior does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible." McGautha v. Jackson Cnty., 36 F.3d 53, 56 (8th Cir. 1994). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." Id. (internal citations omitted).

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Public education is a protected

---

    [5] The court will exercise supplemental jurisdiction over plaintiffs' MHRA claim. 28 U.S.C. § 1367(a).

15

property interest. See Goss v. Lopez, 419 U.S. 565, 574 (1975). To state a procedural due-process claim under the Fourteenth Amendment, plaintiffs must show that "(1) [they have] a life, liberty, or property interest protected by the Due Process Clause; (2) [they were] deprived of this protected interest; and (3) the state did not afford ... adequate procedural rights prior to depriving [them] of the property interest."[6] Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955, 965–66 (8th Cir. 2015).

**B. Merits**

As to the § 1983 claim, plaintiffs do not allege that either the science teacher's or the assistant principal's conduct followed any official District custom or policy. The complaint does not show that the behavioral reflection form caused the alleged discrimination or that it is disproportionately meted or used with respect to African-American students. Although plaintiffs have plausibly alleged discrimination, that discrimination was attendant to the science teacher's and the assistant principal's conduct.

As to the Due Process Clause claim, plaintiffs have not shown that they were denied adequate procedural rights. The complaint fails to allege that the District deprived plaintiffs of a public education. The District did not expel or suspend T.S.V. from Expo or hinder her continued enrollment there. Rather, Verrett

---

[6] Plaintiffs are not alleging a substantive due process violation. See Compl. ¶ 57.

16

voluntarily withdrew her from the school. Moreover, the complaint does not allege that the District failed to afford plaintiffs adequate procedural protections before depriving T.S.V. of her protected right to education. Plaintiffs have not alleged, for example, that T.S.V. was entitled to process before the science teacher made his remarks on the achievement gap. As a result, plaintiffs § 1983 and Due Process Clause claims must be dismissed.

**V. Standing**

The District argues that Verrett lacks standing to assert individual claims. The court agrees.

A plaintiff in federal court "must have suffered an injury in fact" to a "legally protected interest" that is "concrete and particularized" and "actual or imminent" rather than "conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing is a jurisdictional prerequisite. Bernbeck v. Gale, 829 F.3d 643, 646 (8th Cir. 2016).

Courts have routinely denied standing under the theories of relief raised here based solely on parental status. See Webb v. Susquehanna Tp. Sch. Dist., 93 F. Supp. 3d 343, 349 (M.D. Pa. 2015) (dismissed parent as named plaintiff for lack of standing under Title VI and § 1983); Karlen ex rel. J.K. v. Westport Bd. of Educ., 638 F. Supp. 2d 293, 301–02 (D. Conn. 2009) (Title VI); Jackson v. Katy Indep. Sch. Dist., 951 F. Supp. 1293, 1298 (S.D. Tex. 1996)

17

(Title VI); <u>Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.</u>, No. 04 C 8250, 2005 WL 910732, *2 (N.D. Ill. Apr. 3, 2005) (Title VI).

Plaintiffs' reliance on <u>Walker v. Ford Motor Company</u>, 684 F.2d 1355, 1358-59 (11th Cir. 1982) is misplaced. In <u>Walker</u>, the plaintiff was personally forced out of an employment training program, and consequently, personally suffered a loss of a constitutionally protected property interest. <u>Id.</u> at 1359. Here, Verrett was not a student at Expo, nor is he presently entitled to a constitutionally protected right to education.

Plaintiffs also argue that Verrett will suffer "from the long-term adverse effects of discrimination on T.S.V. and her academic and career trajectory," but admits that this loss by its "very nature [is] speculative ...." ECF No. 11 at 24. Plaintiffs argue that the Supreme Court has "been relatively forgiving in this regard," but the court finds no support for a relaxed standing requirement. As a result, Verrett lacks standing and is dismissed as an individual plaintiff. This case will proceed on T.S.V.'s behalf to the extent plaintiffs have raised plausible claims.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss [ECF No. 8] is granted in

part;

    2.    Plaintiff Dennis A. Verrett is individually dismissed;

    3.    The case may proceed on T.S.V.'s behalf with respect to the claims brought under Title VI, the MHRA, and the Fourteenth Amendment Equal Protection Clause; and

    4.    All other claims are dismissed with prejudice.

Dated: July 3, 2019                    s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court